Parker C. J.
delivered the opinion of the Court. The facts stated in the bill of exceptions show a case of hardship and loss to one of the parties in the present action, arising out of the fraud and criminal conduct of a third party ; and the question to be settled by us is, on which of the parties the loss must eventually remain. The action is upon a judgment, and the issue to the jury was upon the plea of payment and satisfaction filed by the defendants. The plea admitting the judgment, which is incontrovertible evidence of the debt, it is obvious, that from the nature of the case, as well as from the form of pleading, the burden is upon the defendants to make out the issue upon legal and competent evidence. They offered no evidence of payment in fact to the plaintiff; on the contrary, it is stated in the exceptions that the money has never been received by him ; but they rely upon a payment to John Smith, junior, who represented himself to be a constable of the town of Gloucester, (and was in fact so,) and as having authority to demand and receive in that capacity the amount due on the execution. No doubt if Smith had that authority, the payment to him would be a satisfaction of the judgment, although the plaintiff may have recovered nothing. His remedy in that case would be against Smith. But it is found, that although Smith was a constable, yet this execution was not directed to him as such from the court or their clerk, or by any order or consent of the plaintiff, but that he fraudulently, as the jury have returned, inserted the direction to the constable ; it is therefore as though no such direction appeared. And the first question made is, whether a constable may by law serve a precept in a civil action, which is not directed to such an officer ; and we think this point well settled in the case of Hearsey v. Bradbury, and recognized as law in Wood v. Ross.
The St. 1795, c. 41, provides that any writ, summons or execution in personal actions, for an amount not exceeding seventy dollars, may be served by any constable within his town or district; but this must be intended to mean when such writ, &c. shall be directed to such officer ; for as the power is only concurrent with that of the sheriff or his deputy, and as *374 the plaintiff or creditor may elect to have the service Bone by sheriff or his deputy, it ought to appear that on the precept itself that authority was intended to be given to the constable on that particular process. Without such direction, the presumption would be, that it was intended to be served by the sheriff or his deputy. Smith therefore acquired no authority merely from being constable to enforce this execution ; certainly none without the assent of the creditor ; so that a payment to him under such circumstances would be the same as payment to any person not an officer, who happened to have possession of the execution.
Without any other evidence, then, than the payment of the money to Smith, who happened to be a constable and to hold the execution, the defendants could not maintain the issue ; but it is said that the plaintiff, by sending the execution to Smith, enabled him to assume the authority to receive, and that the defendants, knowing him to be a constable, and believing the execution to be directed to him as such, ought not to be prejudiced by his actual want of authority. In short, that the evidence in the case proves an implied authority to Smith to receive the money, the execution being in fact sent, although not directed, to him ; and this would be good ground for the defendants, if the plaintiff can be considered as having put any personal trust or confidence in Smith ; or as having authorized him personally to have any control whatever over the execution. But we are not warranted in making any such inference from the facts in the case. The plaintiff seems to have dealt with Smith altogether in his public character as deputy sheriff. The writ was sent to him in that capacity ; the first execution also ; and this was returned by him as deputy sheriff three months after his removal from office, and an alias execution, which is the writ on which the fraud was practised, was at his request sent to him, and directed to him as deputy sheriff. No loches can be imputed to the plaintiff for being ignorant that Smith had been removed from office, it not appearing that any measures were taken to make the removal public. It is evident that the plaintiff trusted only to his office, and this further appears from his having sued the sheriff for the default in not returning the alias execution. It is the same to the *375 plaintiff, therefore, as if the driver of a stagecoach who might have earned the execution to Smith, or any other person into, whose hands it might have fallen, had personated the officer to whom it was directed, and received the money upon it. The plaintiff is not answerable for the unlawful act of inserting the direction, which was the„means by which the receipt of the money was effected.
It follows, we think, that the judgment was not satisfied by this payment, and that the defendants must look to Smith for their indemnity.
It was objected, that as the execution is returned and on file, so that it may be considered a matter of record, having in it a direction to a constable of the town of Gloucester, it was not competent for the plaintiff to show by paroi evidence, that that direction was fraudulently inserted ; but it cannot be doubted that any thing produced as a record may be shown to be forged or altered; if it were not so, great mischief might arise. A record is conclusive evidence, but what is, or is not, a record is matter of evidence, and may be proved like other facts ; otherwise there would be no remedy.
On the plea of nul tiel record, the fact is to be judged of by the court; who no doubt would examine witnesses, upon a suggestion that there had been an interpolation ; and where the question comes up incidentally on an issue to the jury, the same species of evidence must be given to them. If an execution should be filled up in the clerk’s office, and taken out without his signature, and his signature should be forged, it should seem there could be no question, but that this fact might be proved by paroi evidence. If not, there seems to be no remedy for mischiefs of this nature happening to records.
The judgment of the Court of Common Pleas was reversed, and a new trial granted at the bar of this Court.